# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANICE MURRAY<br>4124 Tentham Dr.<br>Pikesville, Maryland 21208<br><br>and<br><br>ALNETT TIMOTHY QUEEN<br>3722 Gibbons Ave.<br>Baltimore, Maryland, 21206<br><br><br>Plaintiffs,<br><br>v.<br><br>AMALGAMATED TRANSIT UNION<br>5025 Wisconsin Ave., NW☐<br>Washington, DC 20016<br><br>ATU LOCAL 1300<br>126 West 25th Street<br>Baltimore, MD 21218 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## COMPLAINT AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiffs, by and through their undersigned counsel, hereby file this Complaint for preliminary and permanent injunctive relief, damages, and other appropriate remedies on the bases set forth below.

### PARTIES

1. Plaintiff Janice Murray is a member in good standing of Amalgamated Transit Union, Local 1300, hereafter "Local 1300." Murray Decl. ¶ 1.

2. Murray resides at 4124 Trentham Drive, Pikesville, Maryland, 21208.

3. Murray is currently employed by the Maryland Transit Administration (MTA) in an employment position included in a bargaining unit represented by Local 1300.

4. Murray has been a member in good standing of Local 1300 since 1988. Murray Decl. ¶ 1.

5. Murray served as Local 1300's Recording Secretary from July 2007 through June 2010. Murray Decl. ¶ 3.

6. Murray was elected President of Local 1300 in June 2013. Murray Decl. ¶8-10.

7. Plaintiff Alnett Timothy Queen is a member in good standing of Local 1300. Murray Decl. ¶ 11.

8.  Queen resides at 3722 Gibbons Ave., Baltimore, Maryland, 21206

9. Queen is currently actively employed by the MTA as a Train Operator.

10. Queen has been a member of Local 1300 since 1989.

11. ATU maintains its headquarters at 5025 Wisconsin Ave., NW, Washington DC 20016. Exhibit E to Murray Declaration.

12. Defendant Amalgamated Transit Union (ATU) is a labor organization as defined by 29 U.S.C. §402.  See *R and C Transit, Inc., and Local 1181-11061, Amalgamated Transit Union, AFL-CIO*, 2013 NLRB LEXIS 804 (NLRB 2014), for an example of an NLRB case involving an ATU affiliate acting as collective bargaining representative for a private sector employer covered by the National Labor Relations Act and under the jurisdiction of the National Labor Relations Board.

13. ATU has affiliates across the United States, some of which have members employed by private sector employers under the jurisdiction of the National Labor Relations Act (NLRA).

14. Local 1300, based in Baltimore, Maryland, is an affiliate of the ATU.

15. Local 1300's members are all employed by the MTA.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 as several of the counts are federal questions arising from 29 U.S.C. § 411, et seq.

17. This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. §1367.

18. This Court has venue over this matter 28 U.S.C. §1391(b)(1) because Defendant ATU maintains its headquarters in the District of Columbia.

19. More specifically to the claims raised in this case, LMRDA §102, 29 U.S.C. §412, lays proper venue in this Court for Counts I, II, and III, because Defendant ATU maintains its headquarters in the District of Columbia.

20. More specifically to the claims raised in this case, LMRDA §304(b), 29 U.S.C. §464(b) lays proper venue in this Court for Count IV because Defendant ATU maintains its headquarters in the District of Columbia..

21. More specifically to the claims raised in this case, the Labor-Management Relations Act (LMRA), §301(a), 29 U.S.C. §185(a), lays

proper venue in this Court for Counts V and VI because Defendant ATU maintains its headquarters in the District of Columbia.

## FACTS

22. Local 1300 represents approximately 2,500 employees of the MTA. Murray Decl. ¶ 2.

23. Murray served as Recording Secretary of Local 1300 from 2007-2010. Murray Decl. ¶ 3.

24. In 2010, Murray ran unsuccessfully for the office of President of Local 1300, being defeated by David McClure. Murray Decl. ¶ 4.

25. Local 1300 elected officials serve three year terms. Murray Decl. ¶5.

26. During the three year term of the 2010 election, Murray returned to her employment for MTA. Murray Decl. ¶6.

27. During that time, while McClure was Local 1300's President, Murray continued to be a vocal critic of McClure. Murray Decl. ¶7.

28. Local 1300's most recent elections were held in June 2013. Murray Decl. ¶ 8.

29. Murray was duly nominated for the position of President in the 2013 election. Murray Decl. ¶ 9.

30. When the ballots were counted on June 12, 2013, Murray and McClure finished as the top two candidates in the election for the office of President. Murray Decl. ¶ 10.

31. Queen received the most votes for the office of Vice-President. Murray Decl. ¶ 11.

32. Because neither Murray nor McClure received a majority of votes cast, Local 1300 held a run-off election between the two candidates pursuant to Section 14 of the ATU Constitution. Murray Decl. ¶ 12. A copy of the ATU Constitution is attached as Exhibit A to the Murray Declaration.

33. The run-off election was conducted on June 25, 2013. Murray Decl. ¶ 13.

34. Murray received more votes than McClure in the run-off election. Murray Decl. ¶ 14.

35. McClure filed a timely election protest against Murray's victory. Murray Decl. ¶ 15. A copy of McClure's written protest is attached the Murray Declaration as Exhibit B to the Declaration.

36. The second stated basis for McClure's protest was that Murray and Queen were not eligible to run for office in 2013 pursuant to the ATU Constitution. Murray Decl. ¶ 16.

37. McClure never raised an objection to Murray's and Queen's eligibility until after the run-off election.  Murray Decl. ¶ 17.

38. The bases of McClure's objections to Murray's and Queen's eligibility were well known to him well before the 2013 nomination and election process. Murray Decl. ¶ 18.

39. McClure's letter paraphrased provisions of Section 14.2 of the ATU Constitution that require a member to be in "good standing" for the

two years prior to the nomination to be eligible to run in the election. Murray Decl. ¶ 19.

40. McClure's argument was that Murray and Queen were not in good standing as of June 2013 because they had not reimbursed Local 1300 for expense payments that McClure alleges were improperly paid to them prior to 2009. Murray Decl. ¶ 20.

41. Neither Murray nor Queen has ever been given an opportunity to defend the improper expense allegations before any sort of internal tribunal. Murray Decl. ¶ 21.

42. If given the statutorily guaranteed opportunity to defend themselves before suffering a deprivation of their rights as union members, Murray and Queen would be able to prove that they had not committed any misconduct and should not have had their good standing membership status taken away. Murray Decl. ¶ 22.

43. In July, 2013, the Local 1300 Election Committee convened to consider McClure's protest. Murray Decl. ¶ 23.

44. The Election Committee denied the protest. Murray Decl. ¶ 24. A copy of the Committee's written decision is attached to the Murray Declaration as Exhibit C to the Declaration.

45. Section 14.8 of the ATU Constitution states, "Any member who is entitled to vote may challenge the conduct or results of an election by filing, within ten (10) days of the counting of the ballots, a challenge to the incumbent [Secretary-Treasurer] of is or her [Local Union] to such effect. The [Secretary-Treasurer] shall submit the challenge for

decision to the executive board, **subject to final ruling by the membership**. (emphasis added) Murray Decl. ¶ 25.

46. Murray proceeded to assume the office of President on or around July 1, 2013. Murray Decl. ¶ 26.

47. As Queen held the office of Vice-President for the 2010-2013 term as well, he simply continued to hold that office throughout 2013, including the beginning of the 2013-2016 term. Murray Decl. ¶ 27.

48. At Local 1300's October 9, 2013, membership meeting, a majority of those members present voted to deny McClure's appeal. Murray Decl. ¶ 28.

49. Pursuant to Section 14.8 of the ATU Constitution, quoted above, that vote should have been the final word on McClure's protests.  Murray Decl. ¶ 29.

50. Earlier, on or about August 29, 2013, McClure wrote to ATU International President Hanley requesting Hanley to "intervene in this matter." Murray Decl. ¶ 30.  A copy of McClure's letter is attached to the Murray Declaration as Exhibit D to the Declaration.

51. In the August 29, 2013, letter, McClure alleges, inter alia, that Murray and Queen were ineligible to run for office in 2013 because they had failed to reimburse Local 1300 for some mileage expense payments several years earlier. Murray Decl. ¶ 31.

52. On or about February 6, 2014, Hanley issued a letter removing Murray and Queen from office and ordering Local 1300 to conduct another

election of officers.   Murray Decl. ¶ 32. A copy of Hanley's letter is attached to the Murray Declaration as Exhibit E to the Declaration.

53. Hanley's letter stated that Murray and Queen "received and retained funds which improperly paid to each of [them]..." Murray Decl. ¶ 33.

54. Neither ATU nor Local 1300 has ever given Murray or Queen an opportunity to respond to the allegations of the February 6, 2014, letter. Murray Decl. ¶ 34.

55. Over the first seven months of Murray's tenure, numerous controversies arose in Local 1300 in which Murray and Queen took positions critical of McClure's management of the Local Union. Murray Decl. ¶ 35.

56. McClure and Local 1300 have been defendants in a still pending lawsuit, Lovelace v. McClure, et al., in the Maryland state courts. A copy of the Complaint in that matter is attached to the Murray Declaration as Exhibit F to the Declaration.

57. Both prior to and after July 2013, Murray and Queen were openly critical of McClure's conduct that gave rise to the Lovelace claims as well of McClure's handling of the litigation. Murray Decl. ¶ 38.

58. In May 2011, a jury trial had rendered a verdict in favor of Lovelace against both Local 1300 and against McClure. A copy of the verdict forms showing that Local 1300 was found liable for approximately $400,000 in damages as a result of McClure's actions is attached to the Murray Declaration as Exhibit G to the Declaration.

59. Local 1300 is currently appealing the jury verdict in the Lovelace case. Murray Decl. ¶ 39.

60. Under McClure's direction, Local 1300 also paid large amounts of money to Local 1300's outside counsel in connection with the trial of the Lovelace case. Murray Decl. ¶ 40.

61. After the verdict, McClure caused Local 1300 to hire even more expensive outside counsel to handle the appeal. Murray Decl. ¶ 41.

62. Murray and Queen publicly questioned whether or not McClure had caused Local 1300 to pay his personal attorney as well. Murray Decl. ¶ 42.

63. As of the time Murray and Queen were unlawfully removed from office in February 2014, Murray and Queen had still not been able to find an answer to the question of who paid for McClure's own legal fees because McClure had left Local 1300's affairs in such disarray by the time Murray became President. Murray Decl. ¶ 42.

64. McClure never received authorization from Local 1300 to spend Local 1300 funds on his personal attorney. Murray Decl. ¶ 43.

65. The above described financial impact the Lovelace case was having on Local 1300 was well known and very controversial among the membership. Murray Decl. ¶ 44.

66. In late 2013, Murray and Queen made efforts to have an outside financial audit of Local 1300 completed. Murray Decl. ¶ 45.

67. Local 1300's Financial Secretary-Treasurer, Bernard Deloatch repeatedly obstructed the efforts of the outside auditor to review various financial documents. Murray Decl. ¶ 46.

68. DeLoatch is a political ally of McClure. Murray Decl. ¶ 46.

69. By the end of 2013, it was clear to Murray and Queen that the findings of the outside audit were going to be very unfavorable to McClure and the manner in which he managed Local 1300 from July 2010 through July 2013. Murray Decl. ¶ 47.

70. Murray and Queen discussed at membership gatherings in late 2013 that they believed McClure had recklessly cost Local 1300 hundreds of thousands of dollars. Murray Decl. ¶ 48.

71. Increasingly during the first six months of her tenure as President, it became clear to Murray that McClure had fallen short of the membership's legitimate expectations of effective representation. Murray Decl. ¶ 49.

72. Murray communicated that conclusion to many members during the first six months of her tenure. Murray Decl. ¶ 50.

73. By early 2014, many of Local 1300's members were upset to find out the extent of McClure's mismanagement, as brought to light by Murray and Queen. Murray Decl. ¶ 51.

74. By February 2014, McClure and ATU were on notice that the imminent release of the independent audit would have incited more anger towards McClure from Local 1300's membership.  Murray Decl. ¶ 52.

75. Hanley's February 6, 2014, letter states, inter alia, that Murray's and Queen's "actions constitute a serious breach of the fiduciary obligations owed by local union officers to their local union." Murray Decl. ¶ 53.

76. Murray and Queen were not given an opportunity at any point to defend those false allegations or to cross-examine their accusers. Murray Decl. ¶ 54.

77. By that letter, Hanley immediately ordered Murray and Queen removed from the offices to which they had been elected. Murray Decl. ¶ 55.

78. The ATU has ordered Local 1300 to conduct a re-run election on March 19, 2014. Murray Decl. ¶ 56.

79. The ATU has further declared that Murray and Queen are not eligible to run in the March 2014 election. Murray Decl. ¶ 57.

80. The ATU has further refused to allow Local 1300 to hold nominations for the March 2014 election, instead declaring that those candidates on the ballot in the 2013 election, minus Murray and Queen, will be the only candidates. Murray Decl. ¶ 58.

81. The ATU's refusal to allow nominations of new candidates deprives the Local 1300 membership of their right to nominate candidates to manage their Local Union. Murray Decl. ¶ 59.

82. Other members of Local 1300 who have been supporters of Murray's and Queen's leadership would run for the offices given that Murray and Queen have been denied that right. Murray Decl. ¶ 60.

83. By its arbitrary and illegal actions, ATU has effectively imposed a trusteeship over Local 1300.

84. ATU has unilaterally, without satisfying even minimal due process requirements, removed elected officials from office.

85. ATU has unilaterally installed other individuals to manage the affairs of Local 1300.

86. By its orchestration of the sham re-run election in March 2014, ATU has given McClure an unobstructed path to take the office of President of Local 1300.

### COUNT I - LMRDA §101(a)

### Union Retaliation for
### Exercise of Protected Rights

87. The above paragraphs are incorporated as if fully re-stated herein.

88. LMRDA §101(a)(1), 29 U.S.C.  §411(a)(1), states, "EQUAL RIGHTS.-- Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

89. LMRDA §101(a)(2), 29 U.S.C.  §411(a)(2), states, "FREEDOM OF SPEECH AND ASSEMBLY.-- Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at

meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

90. LMRDA §102, 29 U.S.C. §412, states Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

91. ATU's decision, particularly in the context of the above stated facts, to remove Plaintiffs from their duly elected positions and to unilaterally deny them the opportunity to run in the illegitimate re-run election was retaliation for their expression of rights protected by §101(a)(5).

92. In addition to suppressing Plaintiffs' rights to express their views as union members, ATU's conduct has substantially chilled the culture with Local 1300 such that many other members reasonably and

justifiably believe that the expression of their rights as members will subject them and their supporters to retaliation.

93. LMRDA §102 gives the Court jurisdiction to remedy ATU's violation and suppression of the protected rights.

## COUNT II- LMRDA §609

### ATU's Effort to Suppress
### Dissent in Local 1300

94. The above paragraphs are incorporated as if fully re-stated herein.

95. LMRDA §609, 29 U.S.C. §529 states, "It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 102 shall be applicable in the enforcement of this section."

96. By depriving Murray and Queen of their right to run for and hold office, a right all members of Local 1300 have, ATU has disciplined Murray and Queen.

97. In the time period prior to the imposition of that discipline, Murray and Queen became increasingly vocal about the mismanagement of Local 1300 under McClure's administration.

98. Murray's and Queen's actions and statements critical of McClure were exactly the type of conduct protected by the LMRDA and for which Section 609 protects them from retaliation.

99. By its actions described above, ATU engaged in a deliberate effort to suppress the free expression of Plaintiffs of their rights as union members.

## COUNT III- LMRDA §101(a)(5)

### ATU's Discipline of Murray and Queen Failed to Respect Their Statutorily Protected Due Process Rights

100.   The above paragraphs are incorporated as if fully re-stated herein.

101.   LMRDA §101(a)(5), 29 U.S.C. §411(a)(5) states, SAFEGUARDS AGAINST IMPROPER DISCIPLINARY ACTION.-- No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

102.   As stated above, ATU has effectively disciplined Murray and Queen and denied them valuable rights as members of Local 1300.

103.   Because ATU refuses to allow Murray and Queen to run in the sham re-run election, ATU is continuing to deny Murray and Queen a basic right of membership- the right to run in an officers' election.

104.   ATU's actions amount to more than just discipline that affects Murray's and Queen's status as officers of the Local Union, but also their status and members in good standing and the rights that flow therefrom.

105.    ATU has completely failed to comply with the simple procedural requirements of LMRDA §101(a)(5) prior to depriving Murray and Queen their status as members in good standing.

## COUNT IV- LMRDA §302, et seq.

### ATU Has Improperly Imposed a de facto Trusteeship Over Local 1300

106.    The above paragraphs are incorporated as if fully re-stated herein.

107.    LMRDA  §302 states, "Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

108.    LMRDA §304(a) states in relevant part, "Any member or subordinate body of a labor organization affected by any violation of this title (except section 301) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate.

109.     LMRDA §3(h), 29 U.S.C. §402(h), defines "trusteeship" as "any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws."

110.     Although ATU has been careful to not label its actions over Local 1300 as a trusteeship or receivership, it is clear from the facts that ATU has effectively imposed a trusteeship over Local 1300. Specifically, ATU has:

   a. Removed duly elected President Murray and duly elected President Queen;

   b. Directed, by ATU International President Hanley's letter dated February 6, 2014, Local 1300 to arrange for new elections;

   c. Assigned, by ATU International President Hanley's letter dated February 6, 2014, staff from ATU to "protect the interests of the membership."

   d. Circumvented Local 1300's membership's choice of elected leadership by removing Murray and Queen; and

   e. Denied Local 1300's membership any meaningful opportunity to choose candidates in the ATU ordered sham re-run election.

111.     Thus, Local 1300 has been deprived of substantial and important aspects of its autonomy.

112.     LMRDA §304(a), 29 U.S.C. §464(a), gives this Court the authority to order "such relief (including injunctions) as may be appropriate."

## COUNT V- LMRA Section 301

## Breach of Contract Between Labor Organizations

113.     The above paragraphs are incorporated as if fully re-stated herein.

114.     The Labor-Management Relations Act (LMRA), §301(a), 29 U.S.C. §185(a), states, "Venue, amount, and citizenship. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

115.     Constitutions of International Unions (or similar parent unions of affiliates in and beyond the United States) have long been held to be "contracts between labor organizations." *United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Indus. v. Local 334*, 452 U.S. 615, (1981)

116.     This Court has previously held specifically that the ATU's Constitution a contract between labor organizations. *Heintzman v. Amalgamated Transit Union Int'l*, 825 F. Supp. 2d 161 (2011).

117.     Section 14 of the ATU Constitution governs local union elections for ATU affiliates.

118.    Section 14.8, Challenges, states, "Any member who is entitled to vote may challenge the conduct or results of an election by filing, within ten (10) days, of the counting of the ballots, a challenge to the incumbent S.T. or his or L.U. to such effect. The S.T. shall submit the challenge for decision to the executive board, subject to final ruling by the membership."

119.    Local 1300's membership denied McClure's challenge.

120.    Thus, according to the plain terms of its own Constitution, ATU had no right to invalidate the 2013 election results.  Its attempt to do so is a breach and must be remedied.

### COUNT VI- LMRA Section 301

### The Sham Re-Run Election is Contrary
### to the Mandates of the ATU Constitution

121.    The above paragraphs are incorporated as if fully re-stated herein.

122.    The ATU's ordering and conduct of the sham re-run election scheduled for March 19, 2014, is also breach of the contract that is the ATU Constitution.

123.    Local 1300's compliance with ATU's unlawful order also puts Local 1300 in breach of the contract that is the ATU Constitution.

124.    Section 14 of the ATU Constitutions sets out a detailed process for local union officer elections.

125.     Section 14 requires that a local union conduct nominations for office, even for elections that are held to fill positions vacated during a term.

126.     While the authors of the ATU Constitution went to great lengths to address many details of local union elections, they made absolutely no provision for any type of election that would deny members the opportunity to nominate candidates.

127.     By unilaterally denying Murray and Queen the opportunity to run in the sham re-run election, and not allowing the membership to nominate anyone in Murray's and Queen's place, ATU and Local 1300 have disregarded the ATU Constitution's clear requirements.

## RELIEF REQUESTED

It is requested that:

128.     This Court issue an Order of preliminary and permanent injunctive relief requiring ATU and Local 1300 to immediately rescind any attempt to remove Murray and Queen from their respective elected positions at Local 1300;

129.     Require ATU and Local 1300 to return Murray and Queen to the offices to which they were elected in 2013;

130.     This Court preliminarily and permanently enjoin ATU and Local 1300 from conducting a re-run election of the 2013 election;

131.     This Court preliminarily and permanently enjoin ATU and Local 1300 from taking any further action with regard to the 2013 officers'

election in Local 1300 as all protests to that election have already been addressed by Local 1300 in accordance with the ATU Constitution;

132.     This Court preliminarily and permanently enjoin ATU and Local 1300 from attempting to deprive Murray and Queen of their good standing membership without providing Murray and Queen their statutorily guaranteed due process rights.

133.     This Court order ATU to make Plaintiffs whole for wages lost as a result of being improperly removed from office.

134.     This Court issue an Order for ATU to pay Plaintiffs' litigation costs and reasonable attorneys' fees.

135.     This Court award such other relief deemed just and proper.


A JURY TRIAL IS DEMANDED.


                                        Respectfully submitted,


Dated: March 10, 2014

                                        Justin P. Keating (475602)
                                        BEINS, AXELROD, P.C.
                                        1625 Massachusetts Ave., NW
                                        Suite 500
                                        Washington DC 20036
                                        703.966.3193
                                        FAX 202.328.7030
                                        jkeating@beinsaxelrod.com

                                        **COUNSEL FOR PLAINTIFFS**