UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANICE MURRAY, *et al.*,

Plaintiffs,

v.                                                          Civil Action No. 14-378 (JEB)

AMALGAMATED TRANSIT UNION,

Defendant.

MEMORANDUM OPINION

On September 2, 2016, this Court issued a Memorandum Opinion and separate Order granting Defendant Amalgamated Transit Union's Motion to Dismiss for lack of subject-matter jurisdiction. See ECF Nos. 74-75. Plaintiffs Janice Murray and Alnett (Tim) Queen now move under Federal Rule of Civil Procedure 59(e) to alter or amend that judgment. They contend that, in part because of new evidence, the Court erred in its prior ruling.

Although the Court concludes that the evidence is neither new nor persuasive, it does agree that one of Plaintiffs' arguments warrants a revisiting of part of the Court's decision. It thus will grant the Motion as to Plaintiff Queen only, reinstating what remains of his suit.

**I.      Background**

As the present Motion challenges the Court's Opinion granting the ATU's Motion to Dismiss, the Court presumes the reader is familiar with that decision and the background information contained therein. See Murray v. Amalgamated Transit Union (Murray IV), 2016 WL 4594222 (D.D.C. Sept. 2, 2016). A more expansive recounting of the factual background and procedural history can be found in the Court's first and second summary-judgment Opinions. See Murray v. Amalgamated Transit Union (Murray III), 2016 WL 1664775 (D.D.C. Apr. 26,

1

2016); Murray v. Amalgamated Transit Union (Murray I), 2014 WL 11281392 (D.D.C. Dec. 19, 2014).

In short, this lawsuit emerged because of a controversial union election. Plaintiffs Murray and Queen sought to become officers of Local 1300, a local affiliate of Defendant Amalgamated Transit Union. Murray I, 2014 WL 11281392, at *1. The ATU represents nearly 200,000 individuals employed in the public and private sectors of the transportation industry, and Local 1300 represents public-sector workers employed by the Maryland Transit Administration. Id. In June 2013, Murray and Queen ran for President and Vice President, respectively, and won. Id. at *3. One month later, the runner-up for President, David McClure, challenged the election, arguing that Plaintiffs had been ineligible to run for office because they were not members in good standing, having failed to reimburse the union for certain payments. Id.

In September 2013, while McClure's challenge was pending, Murray traveled to the ATU Convention, intending to participate as a delegate. See ECF No. 69-2 (Affidavit of Janice Murray, July 6, 2016), ¶¶ 15, 19. The ATU refused to permit Murray and other Local 1300 officers in attendance to sit as delegates because the ballots Local 1300 had used to elect them did not feature the words "and Convention Delegate" or "and Alternate Delegate" next to the offices being voted upon. Id., ¶¶ 13-29.

Several months later, in February 2014, the ATU's then-President made a decision regarding McClure's challenge, concluding that Plaintiffs had not been in good standing at the time of the June 2013 election and thus invalidating the election results, stripping Plaintiffs of their offices and causing a re-run election that McClure won. Murray III, 2016 WL 1664775, at *4.

Murray and Queen responded by filing suit in this Court in March 2014, alleging that the ATU had violated Title I of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411(a)(5), and breached its contractual duties under the ATU Constitution.  See ECF No. 23 (Amended Complaint), ¶¶ 34-42.  More than two years later, after a motion for a temporary restraining order, a motion for a preliminary injunction, two periods of discovery, two summary-judgment motions, and one reconsideration motion, the Court independently identified potential jurisdictional defects in the suit and ordered the parties to consider whether section 403 of Title IV of the LMRDA stripped the Court of subject-matter jurisdiction over the case.  See ECF No. 64 (Order of May 2, 2016).

In addressing the jurisdictional question, the Court explained the relationship between Title I and Title IV of the LMRDA.  See Murray IV, 2016 WL 4594222, at *3-5.  To briefly recap, Title I is "designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline."  Local No. 82, Furniture & Piano Moving v. Crowley, 467 U.S. 526, 536-37 (1984).  Among other things, it prohibits "labor organization[s]" from "fin[ing], suspend[ing], expel[ling], or otherwise disciplin[ing]" its members, "except for nonpayment of dues," absent notice and a hearing.  See 29 U.S.C. § 411(a)(5).  Title IV protects similar rights: it "regulates the conduct of elections for union officers," Crowley, 467 U.S. at 539, and gives "every member in good standing" the right to "be eligible to be a candidate and to hold office (subject to . . . reasonable qualifications uniformly imposed) . . . without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof."  29 U.S.C. § 481(e).

Although they concern similar rights, Title I and Title IV have distinct enforcement mechanisms. Title I grants to individual members a federal cause of action that may be brought in federal court. See id. § 412. Title IV, by contrast, requires a union member to file a complaint with the Secretary of Labor, who then may sue the union in federal court if he or she determines such intervention is warranted. See id. § 482(a)-(b). Title IV also contains "an exclusivity provision," which explains when a Title IV remedy will preempt a plaintiff's ability to seek relief under other laws, including Title I. See Crowley, 467 U.S. at 540; 29 U.S.C. § 483. As relevant here, because Title IV claims can only be brought by the Secretary, Title IV's exclusivity provision divests federal courts of subject-matter jurisdiction to adjudicate claims brought by individual union members after a completed union election that, in substance, seek to challenge the already-conducted election itself. See Crowley, 467 U.S. at 541 & n.16, 544.

Finally, one further wrinkle: the LMRDA generally does not apply to unions whose membership consists entirely of public-sector employees. See 29 U.S.C. § 402(e), (i). But when a non-covered local union (like Local 1300) has a mixed-union parent (like the ATU) — *i.e.*, a parent body comprised of private- and public-sector locals — Title I "protect[s] members of such locals in their dealings with [the] parent union." Murray I, 2014 WL 11281392, at *6 (citing Wildberger v. Am. Fed'n of Gov't Employees, AFL-CIO, 86 F.3d 1188, 1192-93 (D.C. Cir. 1996)). And when a non-covered local union "participate[s] in the election of officers of a national or international labor organization . . . through delegates to the convention" of the mixed-union parent body, Title IV applies "to the election of such delegates." 29 C.F.R. § 452.124; see also id. § 451.3(a)(4); id. § 452.12.

In early September 2016, after considering the parties' briefing on the jurisdictional issue, the Court concluded that because Plaintiffs' election challenge properly fell under Title IV, it

4

lacked subject-matter jurisdiction and granted Defendant's Motion to Dismiss.  See Murray IV, 2016 WL 4594222, at *14.  A few weeks later, Plaintiffs timely filed this Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e).  The ATU opposed the Motion, arguing that reconsideration was not warranted.  Briefing is now complete.

## II.     Legal Standard

Federal Rule of Civil Procedure 59(e) permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry.  The Court must apply a "stringent" standard when evaluating Rule 59(e) motions.  See Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004).  "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citation omitted); see also 11 C. Wright, A. Miller, et al., Federal Practice & Procedure § 2810.1 (3d ed. 2016) (stating that "four basic grounds" for Rule 59(e) motion are "manifest errors of law or fact," "newly discovered or previously unavailable evidence," "prevent[ion of] manifest injustice," and "intervening change in controlling law").  Critically, Rule 59(e) "is not a vehicle to present a new legal theory that was available prior to judgment," Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012), or "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (citation and internal quotation marks omitted).

## III.    Analysis

Plaintiffs propose three grounds on which the Court should reconsider and reverse its judgment dismissing the case for lack of subject-matter jurisdiction: (1) manifest injustice will

exist absent reversal; (2) the Court's conclusion that Title IV applies to the challenged election was clear legal error, as demonstrated in part by newly discovered evidence; and (3) the Court's conclusion that if Murray's election challenge falls under Title IV, Queen's necessarily does as well, was mistaken. See ECF No. 77-1 (Motion for Reconsideration) at 1-2. The Court addresses each in turn.

    A.  Manifest Injustice

Murray and Queen first argue that the Court's dismissal will produce manifest injustice because the ATU did not raise the jurisdictional issue on its own; Plaintiffs incurred two years of litigation costs before the issue was raised; the legal questions underlying the jurisdictional issue are murky and difficult; and the Court previously suggested that Title IV did not bar their claims. See Mot. at 2-3 (citing Murray I, at *6 ("Notwithstanding Title IV's facial kinship with the subject matter of Plaintiffs' claims, Murray and Queen correctly recognize that it does not govern the elections of Local 1300 officers.")). The Court is sympathetic to Plaintiffs' frustration with the late-stage dismissal, particularly given the complexity of the litigation. It, too, wishes the jurisdictional issue had been raised earlier. See Murray IV, 2016 WL 4594222, at *1. But understandable pangs of regret do not make any less true or important the principle drilled into the minds of first-semester law students by their Civil Procedure professors — federal courts are courts of limited subject-matter jurisdiction.

Such jurisdiction is central to the basic principles of judicial authority. For that reason, a court can *sua sponte* question its subject-matter jurisdiction at any time. Even the Supreme Court is obligated to assure itself of its jurisdiction and that of the lower courts. See, e.g., Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); Al-Zahrani v.

Rodriguez, 669 F.3d 315, 317 (D.C. Cir. 2012); Daniels v. United States, 947 F. Supp. 2d 11, 16 (D.D.C. 2013); 5B Wright & Miller § 1350. This Court's exercise of its ongoing responsibility to ensure its subject-matter jurisdiction over the present action — even given the time and money spent by Plaintiffs and the Court's reflections on the subject along the way — simply cannot constitute manifest injustice.

    B.  Title IV's Applicability to Challenged Election

Murray and Queen next contend that the Court's dismissal constituted clear legal error because the challenged Local 1300 election was not a Title IV-covered election of *ex officio* ATU Convention delegates; indeed, they believe that new evidence demonstrates that they cannot obtain relief under Title IV with respect to the ATU's decision to remove them from their officer positions. For the reasons explained below, the Court remains unconvinced.

    1.  *Election of* Ex Officio *Delegates*

Plaintiffs agree, as they have all along, that Title IV covers the election of officers of government-only locals when those officers also are elected as *ex officio* delegates to a mixed parent's convention. See Mot. at 7. In contending that Local 1300's June 2013 election was not such an election, Murray and Queen rehash the same arguments they made in their Opposition to Defendant's Motion to Dismiss, albeit with more precision and depth. Compare Mot. at 7-14 with ECF No. 69 (Opposition to Motion to Dismiss) at 6-8. In particular, they maintain that § 6.7 of the ATU's Constitution provides that "an *ex officio* delegate election can occur only when election ballots contain the Delegate Phrase." Mot. at 10. Because the ballots used in the June 2013 election did not contain the Delegate Phrase, they argue, no *ex officio* delegate election took place. See id. at 10-11. As a result, their reasoning goes, the election does not fall under Title IV.

As before, the Court is unpersuaded. The better reading of the ATU's Constitution is that the Delegate-Phrase provision is a procedural requirement triggered <u>after</u> a local union has decided to select its delegates *ex officio*. Whether or not the procedural requirement is followed does not affect whether an election is properly considered an election of *ex officio* delegates in the first place.

As the Court explained in its previous Opinion, <u>see</u> <u>Murray IV</u>, 2016 WL 4594222, at *11, § 6.7 permits a local union to "provide in local bylaws that local officers and executive board members may be delegates to Conventions of the A.T.U. by virtue of their office." ECF No. 1-3 (ATU Constitution) at 13. If the local union so provides, "[t]he local officers and executive board members elected as delegates and alternate delegates by virtue of their office under the L.U. bylaws shall represent the L.U. as convention delegates to the extent of the available positions." <u>Id.</u> at 13-14. Section 6.7 does not condition its grant of authority to local unions to elect delegates *ex officio* on the inclusion of the Delegate Phrase. Instead, it explains: "Where L.U. bylaws provide that local officers and executive board members may be delegates to Conventions of the A.T.U. by virtue of their office, the ballot must state 'and Convention Delegate' or 'and Alternate Delegate', as appropriate, after each office." <u>Id.</u> at 14. Here, Local 1300's bylaws so provide. <u>See</u> ECF No. 56-8 (Bylaws), § 7 ("All Officers and Board members (except Vice-President) shall be delegates to the International Convention by virtue of their office."). As the text and structure of § 6.7 make clear, the notice requirement is set apart from and subsequent to the delegation of authority to local unions to provide for *ex officio* delegate selection. <u>See</u> <u>Murray IV</u>, 2016 WL 4594222, at *11.

Plaintiffs nonetheless urge that the ATU's interpretation of its own constitution be given "great deference" and argue that the ATU's refusal to seat Murray and other Local 1300 officers

as delegates at the 2013 Convention because of the missing Delegate Phrase means that the "ATU interprets § 6.7 of its Constitution to state and mean that a local union's election is not an election of delegates if the ballots used in it lack the Delegate Phrase." Mot. at 9 (citing Murray v. Amalgamated Transit Union (Murray II), 99 F. Supp. 3d 149, 158 (D.D.C. 2015)).  Plaintiffs are right that "well-established federal law requires 'considerable deference' to the ATU's interpretation of its Constitution." Murray II, 99 F. Supp. 3d at 158 (quoting Monzillo v. Biller, 735 F.2d 1456, 1458 (D.C. Cir. 1984)).  But they are mistaken that the facts here require the conclusion that the ATU interprets § 6.7 as they have claimed.

The ATU explains that it interprets § 6.7 to "require[] ATU local unions who choose to provide for *ex officio* delegates also to include on their ballots notice of that choice; it does not, however, condition local unions' discretion to provide for *ex officio* delegates on the inclusion of the ballot notice language." ECF No. 70 (Reply to Motion to Dismiss) at 4.  "In other words, the ATU Constitution makes inclusion of ballot notice language a consequence of, not a prerequisite to, a local union's choice to make an office an *ex officio* delegate position." Id.  That explanation is not inconsistent with the ATU's decision not to seat Local 1300 officers, including Murray, as voting delegates at the Convention.  Instead, the ATU's decision can be fairly understood as an effort to enforce the Delegate-Phrase requirement, as opposed to a determination that Local 1300's election was not a delegates' election.  For these reasons, the Court does not believe that it has clearly erred, and it therefore will not reconsider its conclusion that the challenged election involved the election of *ex officio* delegates.

      2.   *New Evidence*

In a related effort to convince the Court, Plaintiffs rely on what they characterize as "newly discovered evidence," Mot. at 1, for the proposition that they could not obtain relief

under Title IV. That evidence, however, is not truly "new" as contemplated by Rule 59(e), nor is it legally persuasive.

First, the proffered evidence: Back in early 2014, Murray and Queen spoke with an investigator in DOL's Office of Labor-Management Standards, who told them that DOL lacked jurisdiction to assist them with challenging their removal from office. See ECF No. 77-2 (Affidavit of Janice Murray, Sept. 30, 2016), ¶¶ 2-4. Years later, after the Court issued its September 2016 Opinion, Plaintiffs' counsel contacted Mark Wheeler, a District Director at OLMS, to obtain his view as to whether the Secretary could have sought relief for Murray pursuant to Title IV. See Mot. at 4-5. In response, Wheeler sent a letter to Plaintiffs' counsel on September 27, 2016, explaining that "the Department of Labor would have no jurisdiction to accept and investigate [Murray's] complaint" challenging Local 1300's 2013 officer election unless it could be shown that that election had somehow affected the outcome of the election for ATU International officers that was held at the 2013 ATU Convention. See ECF No. 77-5 (Letter from Mark Wheeler) at 1-2. And even if such an impact could be shown, Wheeler continued, DOL could only order a remedy as to the ATU International officer election, not the Local 1300 one. Id. at 2. This letter, Plaintiffs maintain, demonstrates that Title IV did not govern their election challenge.

Wheeler's letter, however, is not a proper ground for granting a Rule 59(e) motion, as it is not "newly discovered or previously unavailable evidence." 11 Wright & Miller § 2810.1. Murray and Queen asked DOL for help challenging their removal as Local 1300 officers more than two years ago. See Murray Sept. Aff., ¶¶ 2-4. They easily could have documented their conversations with the OLMS investigator and asked him to memorialize in writing his conclusion about lack of jurisdiction, obviating the need to circle back to DOL later on. They

also could have contemporaneously informed the Court of their efforts or at least mentioned them during the four months that passed between when the Court raised its concerns about jurisdiction and when briefing closed on the matter. See Minute Orders of May 2, 2016, and August 19, 2016. Yet they did not. Instead, they waited until <u>after</u> the Court issued its now-challenged final judgment to say anything. Rule 59(e) is not a remedy for such knowing inaction.

The Wheeler letter, furthermore, is not convincing in its conclusion about the lack of a remedy for Murray. Citing no legal authority, he states that DOL would have jurisdiction over Murray's complaint only as it related to her position as a delegate and therefore could only remedy violations relating to the ATU International officer election. See Wheeler Letter at 2. That conclusion, however, appears to be in direct conflict with 29 C.F.R. § 452.12, which provides that the LMRDA applies to "the election of delegates to a convention of [a] parent organization," and with 29 C.F.R. § 452.124, which provides: "To the extent that units . . . participate in the election of officers of a national or international labor organization or an intermediate body, through delegates to the convention or otherwise, the provisions of title IV are . . . applicable to the election of such delegates."

In sum, this evidence offers no basis for granting Plaintiffs' Motion.

### 3. *Clarification*

Although the Court will not reconsider its conclusion that the challenged Local 1300 election was a Title IV-covered election of *ex officio* delegates, it recognizes the need to clarify some of the language in the section of its prior Opinion that discussed that issue. The Court, citing 29 C.F.R. § 452.120, wrote that for Title IV to apply to a public-sector local union's election of delegates to a mixed-parent umbrella convention, "the parent's constitution <u>must</u>

provide for the election of delegates *ex officio*." Murray IV, 2016 WL 4594222, at *10 (emphases added). That statement was unduly narrow. The regulation does not say that the election of delegates "must" or "shall" be *ex officio*. It says "may." See 29 C.F.R. § 452.120 ("Officers of labor organizations who have been elected by secret ballot vote of their respective memberships may, by virtue of their election to office, serve as delegates to conventions at which officers will be elected, if the constitution and bylaws of the labor organization so provide.") (emphasis added). DOL codified the rule after some unions inquired whether selecting delegates *ex officio* was unlawful. See Theodus v. McLaughlin, 852 F.2d 1380, 1384 (D.C. Cir. 1988); Teamsters for a Democratic Union v. Sec'y of Labor, 629 F. Supp. 665, 667 & n.1 (D.D.C. 1986). In so doing, DOL sought to give permission to unions to provide that local union officials could serve as delegates to national conventions *ex officio*. It did not require that they do so. Democratic Union, 629 F. Supp. at 667. Unions may, for example, choose delegates to national conventions via special elections. Id. As long as the means by which local public-sector delegates to mixed-body parent conventions are chosen is lawful, Title IV applies to their election.

This clarification does not affect the prior holdings in this case, nor the decision on the instant Motion, but the Court hopes it will mitigate any confusion inadvertently caused.

C. Title IV's Applicability to Queen

Continuing in this vein, there is one issue on which the Court must admit error and, accordingly, alter its judgment. It previously rejected Plaintiffs' argument that even if Murray's challenge falls under Title IV, Queen's does not, reasoning that "Title IV remedies do not toggle on or off depending on the status of a given candidate; on the contrary, they apply to an election

as a whole." Murray IV, 2016 WL 4594222, at *12.  Upon reflection and considered review of the case law, the Court concludes that it was wrong to take such a position.

Plaintiffs paid scant attention to this argument in the prior round of briefing, devoting only one paragraph of their Opposition to the issue.  See Opp. to MTD at 9.  The treatment was not so minimal, however, as to have forfeited the argument.  Plaintiffs now devote far more detail in their Motion for Reconsideration, which is sufficient to convince the Court that, while Murray's election challenge is subject to the exclusivity provision of Title IV and must be dismissed, Queen's is not.

According to Local 1300's bylaws, "All Officers and Board members (except Vice-President) shall be delegates to the International Convention by virtue of their office."  Bylaws, § 7.  The challenged Local 1300 election thus was an election both for an officer who became a delegate *ex officio* — Murray, as President — and an officer whose office did not make him a delegate — Queen, as Vice President.  At least three other cases have dealt with similar situations — *i.e.*, an election involving several positions, some of which fell within Title IV's ambit and some of which did not.  In each case, the Secretary did not treat the election monolithically, but instead ordered a remedy only as to those positions over which she or he had jurisdiction.

Knisley v. Teamsters Local 654, 844 F.2d 387 (6th Cir. 1988), for example, arose from a challenge to a local union's election for several officer positions — business agent, secretary-treasurer, and trustee.  Id. at 388.  Three union members who had been barred from running for the various positions filed a complaint with the Department of Labor under Title IV.  The Secretary ordered new elections for trustee and secretary-treasurer but refused to order one for business agent because "the business agent position was not an 'officer' whose election was

mandated under Title IV of the LMRDA" and DOL thus "lacked the statutory authority to compel an election for that office." Id. Plaintiffs then filed suit in federal district court, alleging, *inter alia*, that the union had violated their rights under Title I by refusing to permit one of them to run for business agent. Id. at 387-88. On appeal, the Sixth Circuit held that where Title IV's regulations do not apply to the election for a given office, its "exclusivity provisions . . . are likewise inapplicable." Id. at 391. The court therefore concluded that "the plaintiffs should be allowed to proceed with their Title I claims against the Union where the Secretary has previously determined that Title IV does not apply." Id. To hold otherwise, the court explained, "would result in a 'whip-saw' effect whereby plaintiffs would be denied a remedy under either Title I or Title IV." Id.; see also Perreault v. Local 509, 823 F.2d 35, 36 (2d Cir. 1987) (discussing how Secretary of Labor concluded that "Zonemen" were not officers under LMRDA and so ordered union to hold rerun election for other officer positions but not for Zonemen); Fiori v. Truck Drivers Union Local 170, 130 F. Supp. 2d 150, 155 (D. Mass. 2001) (explaining that where "a particular union office is not covered by Title IV, the exclusivity provision of Title IV does not apply, and a plaintiff's Title I claims are therefore not precluded").

      Plainly, then, Title IV remedies may toggle on or off depending on the position sought in a particular election. Where Title IV does not apply to a given position, a Title I remedy is not foreclosed. While any union member (not just office-seekers) may submit a challenge to the Secretary concerning the election to a covered position, no one may do so for a non-covered position. The Court, consequently, holds that Title IV's exclusivity provision does not require dismissal of Queen's Title I claim, and that it has jurisdiction to proceed on his election challenge.

**IV.	Conclusion**

For these reasons, the Court will grant the Motion to Alter or Amend Judgment in part and deny it in part. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:   December 6, 2016